UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MAHONEY HAWKES, LLP ) | |
| ) | Case No. 01-12880-WCH |
| Debtor ) | Chapter 11 |
| ) | |

## MOTION FOR LEAVE TO FILE APPEAL

Go-Best Assets Limited ("Go-Best") requests this Court, pursuant to Rule 8003(a) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C § 158, for leave to appeal the Order Approving the Disclosure Statement for the First Amended Joint Plan of Reorganization Proposed by Mahoney Hawkes, LLP and the Official Committee of Unsecured Creditors entered by the Bankruptcy Court on December 30, 2003 (the "Order" and as further defined below). As set forth below, Go-Best believes that the Order is a final order, however, in an abundance of caution, Go-Best submits this Motion for Leave to Appeal in the event that this Court finds that the Order is in fact interlocutory.

In support of its request, Go-Best provides information as required by Fed. Bankr. R. 8003(a) as follows:

### Statement of Background Facts

1.  On or about April 18, 2002, Mahoney Hawkes, LLP (the "Debtor") and the Official Committee of Unsecured Creditors (the "Committee" and collectively with the Debtor, the "Plan Proponents") filed their Disclosure Statement (the "Initial Disclosure Statement") and

1



Joint Plan of Reorganization Proposed by Mahoney Hawkes, LLP and the Official Committee of Unsecured Creditors (the "Initial Plan").

2. On June 19, 2002, the Bankruptcy Court held a hearing with respect to the adequacy of the Initial Disclosure Statement underlying the Initial Plan. Go-Best, the largest creditor in these proceedings, filed an objection to the Initial Disclosure Statement on a number of bases. The Court, during the hearing on the adequacy of the Initial Disclosure Statement, requested the Plan Proponents and Go-Best to submit briefs addressing three (3) particular issues which were of concern to the Court regarding the ability of the Plan Proponents to confirm the Initial Plan; separate classification of claims, third party releases and injunctions, and discharge of the Debtor.

3. In accordance with the Bankruptcy Court's order, Go-Best and the Plan Proponents filed their respective briefs addressing the issues; followed by respective Reply Briefs. Oral arguments were presented to the Bankruptcy Court at a hearing on August 19, 2002, and the Bankruptcy Court took the matter under advisement.

4. On November 18, 2002, the Bankruptcy Court entered an order denying the motion for approval of the Initial Disclosure Statement and issued a written Decision Regarding Motion for Approval of Disclosure Statement and Entry of Procedural Order (collectively, the "Prior Decision"). A copy of the Prior Decision, In re Mahoney Hawkes, LLP, 289 B.R. 285 (Bankr. D. Mass. 2002), is attached hereto as Exhibit A.

5. On or about August 27, 2003, the Plan Proponents filed their First Amended Joint Plan of Reorganization Proposed by Mahoney Hawkes, LLP and the Official Committee of Unsecured Creditors (the "Amended Plan"), a Disclosure Statement for the Amended Plan (the

"Amended Disclosure Statement"), and a Motion for Approval of the Amended Disclosure Statement.

6.  Prior to the filing of the Amended Plan and Amended Disclosure Statement, Go-Best, the Plan Proponents and Continental Casualty Insurance ("CNA") all filed timely notices of appeal from the Prior Decision, along with respective motions for leave to appeal. Such appeals were docketed in the United States District Court of Massachusetts (Civ. No. 02-12407-PBS). While the appeals were pending in the District Court, the Plan Proponents filed their Amended Plan and Amended Disclosure Statement in the Bankruptcy Court.

7.  As a result of the filing of the Amended Plan and Amended Disclosure Statement, the parties entered into the <u>Stipulated Order Preserving All Issues Raised on Appeal from Order Denying the Motion for Approval of the Disclosure Statement Entered by the Bankruptcy Court on November 18, 2002</u>, which was approved by the District Court on November 5, 2003. This stipulation expressly preserved the parties' rights of appeal. See also Order, at 7 ("[T]he Debtor and Go-Best agreed that their understanding with respect to the dismissal of the appeal was that the issues which had been appealed were being preserved pending the outcome of the hearing on the [Amended Disclosure Statement].").

8.  On October 8, 2003, the Bankruptcy Court held a hearing on the Motion for Approval of the Amended Disclosure Statement. Go-Best, also, filed an objection to the Amended Disclosure Statement on a number of bases. Following the hearing, the Court took the matter under advisement.

9.  On December 30, 2003, the Court entered the Order and issued a Memorandum of Decision Regarding Motion for Approval of Disclosure Statement for First Amended Joint Plan of Reorganization Proposed by Mahoney Hawkes, LLP and the Official Committee of

3

Unsecured Creditors (collectively, the "Order"). A copy of the Order is attached hereto as Exhibit B.

10. In the Order, the Bankruptcy Court specifically adopted and incorporated those rulings from its Prior Decision on issues that were not otherwise ruled on in the Order.. See Order, at 9.

11. Among other findings, the Court held in the Order that the separate classification of the "insured claims" of the Class 3 creditors from the "uninsured claims" of the Class 4 creditors proposed by the Amended Plan was appropriate despite the law of this Circuit and Go-Best's position that such separate classification was impermissible. In addition, the Court ruled that the involuntary non-debtor third party releases in the Amended Plan were permissible, neglected to apply the appropriate standard to determine whether such releases are appropriate; and found that not all the proceeds of the Debtor's insurance policy were property of the Debtor's bankruptcy estate (notwithstanding the Prior Decision.)[1] Finally, the Court, in approving the Amended Disclosure Statement, has sanctioned the Plan Proponents solicitation of votes on the Amended Plan to proceed in accordance with plan voting procedures which automatically encourage creditors to vote as Class 3 creditors, hereby effectively eliminating the voting powers of Class 4 creditors.

## Statement of Questions and Relief Sought

12. Go-Best believes that the principal questions on appeal are as follows: (i) Did the Bankruptcy Court incorrectly rule that separate classification in the Amended Plan of the claims of creditors holding general unsecured claims is appropriate?; (ii) Did the Bankruptcy Court incorrectly rule that the involuntary non-debtor third party releases in the Amended Plan are

---

[1] Additionally, it is unclear whether the Bankruptcy Court, pursuant to the Order, approved the settlement reached by and among CNA, the Committee and the Debtor. To the extent the settlement has essentially been approved, subject to entry of an order confirming the Plan, Go-Best seeks to appeal this part of the Order as well.

4

permissible?; and (iii) Did the Bankruptcy Court err in approving voting procedures which effectively eliminate the voting power of a certain class of impaired creditors? Each of these rulings encompasses issues which Go-Best believes were incorrectly decided as a matter of law. In the event, this Court finds the Order to be a final order, or grants leave to appeal the Order as interlocutory, Go-Best, in briefing the appeal questions, will seek to address each such issue.

13.     The District Court's jurisdiction over bankruptcy appeals is regulated by 28 U.S.C § 158. The statute provides for two fundamental courses of appeal. A party may appeal as a matter of right "from final judgments, orders, and decrees [of bankruptcy courts]." Id. at § 158(a)(1). In addition, the District Court has discretion to permit appeals from "other interlocutory orders and decrees [of bankruptcy courts]" Id. at § 158(a)(3). For the reasons set forth below, Go-Best believes that the Order (i) allowing separate classification of the "insured claims" of the Class 3 creditors from the "uninsured claims" of the Class 4 creditors (the "Separate Classification Issue"); (ii) ruling that involuntary non-debtor third party releases are permissible (the "Release Issue"); and (iii) allowing the prejudicial voting procedures to be used to solicit votes on the Amended Plan (the "Voting Issue") is a final order. In the event that this Court finds that the Order is not a final order, but rather interlocutory, Go-Best, by this Motion, seeks leave to appeal the Order.

### Statement of Reasons Why an Appeal Should be Granted

#### I.     The Order is a Final Order

14.     In assessing whether an order is a final order, courts, including those in the First Circuit, apply the same principles that govern finality under 28 U.S.C. § 1291 (governing civil appeals from district court final orders to court of appeals) and 28 U.S.C. § 158(d) (governing

court of appeals jurisdiction over bankruptcy appeals from final determinations of the district court and bankruptcy appellate panel).

15.  Addressing the finality requirements of 28 U.S.C. § 1291, courts have looked to the legislative intent to "disallow appeals from any decision which is tentative, informal or incomplete." In re Bank of New England Corp., 218 B.R. 643, 647 (1st Cir. B.A.P. 1998) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, (1949)). In addition "[s]o long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." In re Bank of New England Corp., 218 B.R. at 647. Courts, however, have found that compared to the traditional civil case, a bankruptcy case holds more potential for the resolution of discrete disputes that might qualify as "judicial units" for purposes of appeal. See In re Bank of New England Corp., 218 B.R. at 646. In fact, a bankruptcy court order "will be appealable if it conclusively determines a discrete dispute within the larger case." Id. (quoting In re Harrington, 992 F.2d 3, 5 (1st Cir. 1993)); see also In re Saco Local Dev. Corp., 711 F.2d 441, 444 (1st Cir. 1993) ("Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case.").

16.  Go-Best seeks to appeal the Court's rulings on the Separate Classification Issue, the Release Issue and the Voting Issue. The Separate Classification Issue, the Release Issue and the Voting Issue will hereafter be collectively referred to as the "Disputed Plan Issues."

17.  In the Order, the Bankruptcy Court ruled completely and conclusively, not tentatively on the Disputed Plan Issues. First, the Court concluded that the separate classification provided in the Plan was valid and did not violate First Circuit precedent. Second, the Court ruled that the non-debtor third party releases provided by the Amended Plan are appropriate. In so ruling on the Release Issue, the Court did not apply the appropriate First Circuit standard.

6

issues for the hearing on confirmation.").[3] Also, the Voting Issue is not a question of adequacy of the Amended Disclosure Statement, but instead is an issue governing the rights and voting power of impaired creditors.

20.     Further, Go-Best may be denied the ability to contest the Disputed Plan Issues at the confirmation hearing. Specifically, the Bankruptcy Court at that stage could find that Go-Best waived its right to appeal on the Separate Classification Issue and the Release Issue as the Court explicitly ruled on these confirmation issues as confirmation issues at the disclosure statement stage. In addition, once votes on the Amended Plan are solicited in accordance with the improper voting procedures, an appeal on the Voting Issue may be moot. As a result, Go-Best will **not** "have ample opportunity to object" to these issues of the confirmation of the Plan and will be precluded from appealing the Court's ruling on the Voting Issue.

21.     Consequently, cases holding that a bankruptcy court's ruling on the adequacy of a disclosure statement is not a final order can be readily distinguished from the present case. Further, the fact that an order of a bankruptcy court confirming a Plan is a final order further supports a finding that the Order, explicitly ruling on confirmation issues, is a final order. See In re Fili, 257 B.R. 370, 373 (1st Cir. B.A.P. 2001) ("Plan confirmation is a final order").

22.     For the reasons set forth above, Go-Best asserts that the Order is a final order and therefore this Motion for leave to appeal is unnecessary.

   **II. If The Court Finds That The Order Is An Interlocutory Order, An Appeal Is Appropriate In This Case**

23.     In the First Circuit, leave of court to appeal an interlocutory order is appropriate under either the "collateral order doctrine" or a second set of criteria that have been established by courts in their discretion when granting § 158(a)(3) motions. Under either of these standards,

---

[3] Judge Hillman further acknowledged that "[w]hile these are issues for the hearing on confirmation, I find it appropriate to rule on them now." In re Mahoney Hawkes, 289 B.R. at 289.

an appeal of the Order is appropriate and, thus, Go-Best respectfully requests that this motion should be granted.

### (a) Leave To Appeal Should Be Granted Under Collateral Order Doctrine.

24. Courts in the First Circuit may grant leave to appeal if an order of the bankruptcy court satisfies the requirements of the "collateral order" doctrine. See In re Bank of New England Corp., 218 B.R. 643, 647 (1st Cir. B.A.P. 1998). Collateral orders are those decisions "'which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" Id. at 649 (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, (1949)). As it has been developed by courts in the First Circuit, the Collateral Order Doctrine requires that the order being appealed must have (1) conclusively determined, (2) an important legal question, (3) completely separate from the merits of the primary action, and (4) be effectively unreviewable on appeal from a final judgment on the remaining counts. See id. (citing Petralia v. AT&T Global Info. Solutions Co., 114 F.3d 352, 354 (1st Cir. 1997) and other cases). Go-Best's appeal meets each of these requirements and as a result leave should be granted.

### i. The Order Conclusively Determines the Disputed Plan Issues

25. The Bankruptcy Court found that " the separate classification [of the "insured claims" of the Class 3 creditors from the uninsured claims of the Class 4 creditors] is appropriate." In re Mahoney Hawkes, LLP, 289 B.R. at 296. Further, the Bankruptcy Court neglected to apply the correct standard for assessing whether the non-debtor third party releases are appropriate, instead applying the First Circuit standard for assessing the reasonableness of settlements. In doing so, the Bankruptcy Court conclusively determined the Release Issue – i.e,

non-debtor third party mandatory releases are appropriate. Finally, the Bankruptcy Court approved the improper voting procedures thus allowing solicitation of votes to proceed pursuant to such procedures. As such, there can be no doubt that the Order has conclusively determined the Disputed Plan Issues.

### ii. The Order Presents Important Legal Questions

26. Given the existence of controlling precedent in the First Circuit with respect to separate classification of claims, the Bankruptcy Court, in determining that the Amended Plan may separately classify the claims of insured and uninsured unsecured creditors, is an important legal question for appeal. Further, the Court of Appeals of the First Circuit has not ruled on the issue of non-debtor third party releases. There are no known reported decisions in the First Circuit in which the Court has confirmed a plan containing non-debtor releases over the objection of another party. Consequently, the Release Issue presents an important legal question. Finally, voting procedures are a significant component of any plan and the existence of improper procedures will jeopardize plan confirmation which is the ultimate goal of any Chapter 11 bankruptcy proceeding.

### iii. The Disputed Plan Issues Are Completely Separate From The Merits Of The Primary Action

27. In order to be reviewable at this time, the subject of the Order must be "completely separate from the merits of the primary action." In re Bank of New England Corp., 218 B.R. at 649. The "primary action" in the current situation is the adequacy of the Amended Disclosure Statement and whether it contains sufficient information pursuant to 11 U.S.C. § 1125(a). The three Disputed Plan Issues are separate, and each is "not an ingredient of the [adequacy issue] and does not require consideration with it." Id. at 650 (quoting Cohen, 337 U.S. at 546-47). Rather, two of the Disputed Plan Issues, as acknowledged by the Bankruptcy

10

Court, are confirmation issues. See In re Mahoney Hawkes, LLP, 289 B.R. at 289. Also, the Voting Issue is just that, a plan voting issue, and not a question of adequacy of the Amended Disclosure Statement.

### iv. Denying Go-Best The Right To Appeal The Disputed Plan Issues Now Would Render The Order "Unreviewable" At The End Of The Case

28. In order to qualify under this element, "denial of the immediate appeal must 'render impossible any review whatsoever.'" In re Bank of New England, Corp. 218 B.R. at 651 (quoting U.S. v. Ryan, 402 U.S. 530, 533 (1971)). If the Disputed Plan Issues cannot be appealed at this juncture, there is nothing to prevent the Bankruptcy Court from confirming a plan, which provides for separate classification of insured and uninsured unsecured claims, contains involuntary non-debtor third party releases, and has been accepted by impaired creditors voting pursuant to improper voting procedures. Go-Best, by virtue of the Order, may be precluded from raising an objection to such issues at the confirmation stage. Therefore, such preclusion clearly provides "'special circumstances making it essential' for the [District Court] to decide the merits at this time." Id. (quoting In re Empresas Noroeste, Inc., 806 F.2d 315, 317 (1st Cir. 1986)).

29. In sum, the Order, with respect to the Disputed Plan Issues, conclusively determines important legal questions which are completely separate from the merits of the primary action, and which would be effectively unreviewable on appeal from a final judgment on the remaining issues. Therefore Go-Best should, under the Collateral Order Doctrine, be granted leave to appeal the propriety of the Disputed Plan Issues.

### (b) Leave to Appeal should be allowed under the Discretionary Factors under 28 U.S.C. § 158(a)(3)

30. Under 28 U.S.C § 158(a)(3), the District Court has discretion to permit appeals from "other interlocutory orders and decrees [of bankruptcy courts]" 28 U.S.C § 158(a)(3). The statutes and the rules governing such appeals do not provide district courts with codified standards for examining such requests. See 28 U.S.C § 158, Fed.R.Bankr. 8001, 8003; In re Murray, 116 B.R. 6 (D.Mass. 1990); In re Kalian, 191 B.R. 275 (Bankr. D.R.I. 1996). First Circuit courts construing the interlocutory provisions of § 158 have adopted the standards of review for certification on interlocutory appeals to the Circuit Court pursuant to 28 U.S.C § 1292(b). See In re Bank of New England Corp., 218 B.R. at 652; In re Kalian, 191 B.R. at 279. A party pursuing § 1292(b) relief must show that (1) the order involves a controlling question of law (2) as to which there is substantial ground for difference of opinion, and (3) whether an immediate appeal from the order may materially advance the ultimate termination of the litigation. In re Bank of New England Corp., 218 B.R. at 652. Again, Go-Best's appeal meets the necessary criteria.

31. First, the Order "presents a question of law that controls the outcome of the underlying case." Id. With respect to the Disputed Plan Issues, the Order controls the outcome of the treatment and rights of certain creditors under the Amended Plan. The Order also controls whether the Amended Plan will be properly voted upon by creditors. These issues all affect the ability to confirm the Amended Plan; the ultimate resolution of any bankruptcy proceeding.

32. Second, to warrant discretionary review, the order on appeal must involve a legal issue on which there is substantial ground for difference of opinion. There is a clear difference of opinion with respect to the of Separate Classification Issue and the application of the First Circuit controlling precedent. Go-Best believes that the Order allowing such separate classification is at odds with other decisions of Bankruptcy Courts in this Circuit as well as being

inapposite to First Circuit precedent. Further, there is a clear difference of opinion with respect to the Release Issue. Go-Best believes that the Court did not apply the correct standard on this issue and the Court's allowance of the non-debtor third party releases violates the Bankruptcy Code. Additionally, there is no First Circuit authority directly on this issue. Therefore, there exists pivotal questions of law not correctly settled by controlling authority. See id. at 653. Finally, the Voting Issue presents a substantial ground for difference of opinion as the Plan Proponents believe the voting procedures to be proper, while in Go-Best's view, the effect of the procedures eliminates the voting powers of certain creditors; this is particularly crucial given that voting procedures are the cornerstone of any confirmed plan.

33. Finally, to warrant discretionary interlocutory review, the appeal of the Order must also "materially advance the ultimate termination of the litigation." Id. Final resolution of the propriety of the Disputed Plan Issues would materially advance the question of confirmability of the Amended Plan, which, as noted, is the ultimate conclusion to this Bankruptcy Case.

34. In sum, as the three prongs of § 1292(b) are satisfied, the Court must grant Go-Best leave to appeal the Order.

Dated: January 9, 2004                          GO-BEST ASSETS LIMITED

                                                By its attorneys,

                                                /s/ William W. Kannel
                                                William W. Kannel (BBO No. 546724)
                                                Daniel S. Bleck (BBO No. 560328)
                                                Ruth M. Bayley (BBO No. 651314)
                                                MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
                                                  AND POPEO, P.C.
                                                One Financial Center
                                                Boston, MA 02111
                                                (617) 542-6000

                                                --and--

                                                Peter B. Krupp (BBO No. 548112)
                                                LURIE & KRUPP, LLP
                                                One McKinley Square
                                                Boston, MA 02109
                                                (617) 367-1970